PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEON LAMONT WASHINGTON, | ) | |
| | ) | CASE NO.  1:20CV0808 |
| Petitioner, | ) | (1:18CR0331-6) |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | [Resolving ECF Nos. 713, 727, |
| | ) | 737, and 928] |

Pending is *Pro Se* Petitioner Leon Lamont Washington's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 713) as to Counts 1 and 29 only.[1]  Also pending are Respondent's Motion to Strike Petitioner's § 2255 Motion (ECF No. 727) and Petitioner's "Coexisting Motion in Opposition to Respondent's Misplaced Bid to Strike Petitioner's § 2255 [Motion]; and Motion to Exceed Page Limits" (ECF No. 737).  Finally, pending is Petitioner's Motion to Grant Page Enlargement as to Attached Motion in Relation to Original 2255 Petition (ECF No. 928).  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons stated below, the § 2255 motion (ECF No. 713) is denied on the merits.

---

[1]  Unless otherwise indicated, the docket references will be to the criminal case, not the related civil case, 1:20CV0808.

(1:20CV0808)

## I.  ECF Nos. **727** and **737**

Respondent's Motion to Strike Petitioner's § 2255 Motion (ECF No. 727) cites *United States v. Martinez*, 865 F.3d 842 (6th Cir. 2017) in support of the motion.  In *Martinez*, the Sixth Circuit held the district court correctly applied Local Rule 7.1(f) (limiting memoranda relating to dispositive motions in standard cases to 20 pages) to a prisoner's motion to vacate.  *Id.* at 844. The § 2255 Motion (ECF No. 713) in the case at bar asserts two grounds for relief.  The standard motion form (AO 243) and Certificate of Service (ECF No. 713) consist of 13 pages, and the Memorandum of Law (ECF No. 713-1) is 34 pages in length.  There are no exhibits.  In response to ECF No. 727, Petitioner requests leave to exceed the page limitations.  *See* ECF No. 737.

For good cause shown, the Court grants Petitioner's Motion to Exceed Page Limits (ECF No. 737) without opposition.  Respondent's Motion to Strike (ECF No. 727) is denied as moot.

## II.  Background

In June 2018, a federal grand jury in the Northern District of Ohio returned an Indictment (ECF No. 1) against Petitioner and 24 others.  Petitioner was charged with conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and (b)(1)(B), and 846 (Count 1), distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 29), and use of a communication facility in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 843(b) (Count 59). As part of the drug distribution conspiracy, the defendants used phones, their familial

(1:20CV0808)

connections, and their networks to import and distribute narcotics.[2]  The Indictment (ECF No. 1)

charged the following overt acts committed by Petitioner in furtherance of the conspiracy:

> 171.    On or about November 27, 2017, at approximately 12:22 p.m., TROY
> DAVIS called WASHINGTON, who stated, "I'm not even helping Shorty
> (WILLIAM SOLOMON).  I'm not giving Shorty no drugs."  TROY DAVIS
> responded, "Right."  WASHINGTON stated, "He ain't getting no more drugs out
> of me . . . I'm like, I'll help Shorty a different way, but I ain't giving that ni**a no
> more drugs to f**k up."  Later in the conversation, TROY DAVIS stated, "I said
> 'cuz.' I said, 'that's a lie!'  I said 'because me and Miko (WASHINGTON) gave
> you a couple of them things together, Bro.  The same day, my ni**a.  The same
> day, Bro!  You keep . . . ."  WASHINGTON responded, "Hell no, I ain't giving
> him s**t.  I gave the ni**a a nine pack (nine ounces of cocaine)!  . . . Joey stepped
> up and gave him some . . . them ni**as gave him somethin'."  TROY DAVIS
> stated, "Listen, but me and you had got that s**t that one day, Bro.  I gave him
> one, you gave him one.  You remember that s**t, cuz?  I gave him a whole one
> (an additional nine ounces)! . . . You gave him one, Bro."  WASHINGTON then
> responded, "And I gave, and I gave him, and I gave him something after that."
> TROY DAVIS stated, "And then he f***ed that up! . . . Ni**as giving you nine
> packs, you f**king it up, ni**a.  Ain't the first one, He ain't the only one to give
> you one!  Somebody else give you one too and you f**k it up!"

ECF No. 1 at PageID #: 42.

> 195.    On or about December l, 2017, at approximately 4:33 p.m., TROY
> DAVIS received an incoming phone call from WASHINGTON, who stated, "Got a
> couple of Cleveland girls here (cocaine from a Cleveland-based supplier).  Bring
> some money."  TROY DAVIS replied, "S**t though, I need to get . . . I need to
> get with you again too."  WASHINGTON stated, "Oh, Unc, we on the phone."
> TROY DAVIS responded, "I know, but we ain't talkin bout that bro.  But we . . .

---

[2]  The Indictment (ECF No. 1) is constitutionally sufficient.  *See United States v. Musick*, 291 Fed.Appx. 706, 725 (6th Cir. 2008) ("[T]he indictment set out the names of all indicted co-conspirators, the relevant dates of the conspiracies, the means and methods of the conspiracies, and, where required, the overt acts in furtherance of the conspiracies. As such, it was sufficient."); *United States v. Reynolds*, 762 F.2d 489, 494 (6th Cir. 1985) (explaining that "an indictment for conspiring to commit an offense" does not need to "allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy") (punctuation modified).

(1:20CV0808)

I'll talk to you when I get there, though." WASHINGTON replied, "Aight."

ECF No. 1 at PageID #: 47.

205.  On or about December 3, 2017, at approximately 2:56 p.m., WASHINGTON received an incoming phone call from E.C. (known to the Grand Jury but not charged herein), who stated, "Bro, police is on the corner.  What is ya'll doing."  WASHINGTON replied, "I know that's what I'm trying to tell Corn . . . Bobbie.  They been following us since the south side."  E.C. stated, "Yeah they . . . they just was taking pictures of my crib.  I followed them to the E [code for Elyria]."  E.C. stated, "Yeah ni**a they look, they in that mirror.  They probably listening to us too, so f**k them we on our way to get some new phones."

ECF No. 1 at PageID #: 49-50 (brackets added).

329.  On or about February 10, 2018, CS-3 [a confidential source] purchased 6.94 grams of cocaine from WASHINGTON for $340.00 dollars on Artemes Court in Elyria, Ohio.

ECF No. 1 at PageID #: 81 (brackets added).

344.  On or about March 18, 2018, at approximately 12:29 p.m., WASHINGTON made an outgoing call to D.B. (known to the Grand Jury but not charged herein).  During the conversation, WASHINGTON said, "I had a little something I'm gonna bless you with, just to give you man, see if you like ya like it dog."  D.B. replied, "Ya, I really, I appreciate that man, ya I mean, I'll try it and I'll hit you back up, you know what I'm saying like, no doubt about that."  WASHINGTON said, "Ya, no big deal."  D.B. said, "I'm sure it ain't no, no bs [laughs]."  WASHINGTON said, "Na, I picked up a nine (nine ounces of drugs) it ain't, it ain't, no, this is, you'll like it, it ain't no big deal, I got, I mean a little something I had for you, had put it aside, see if you like it."

ECF No. 1 at PageID #: 84 (brackets in original).

Count 29 of the Indictment charged a controlled buy executed during the investigation,

and is a substantive count associated with the conspiracy:

376.  On or about February 10, 2018, in the Northern District of Ohio, Eastern Division, Defendant LEON LAMONT WASHINGTON did knowingly and intentionally distribute approximately 6.94 grams of a mixture or substance

4

(1:20CV0808)

containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United Stated Code, Sections 841(a)(l) and (b)(l)(C).

Attorney David C. Jack was present and appointed as Criminal Justice Act ("CJA") counsel for Petitioner at his arraignment.  Petitioner entered a plea of not guilty.  *See* Transcript of Arraignment (ECF No. 646); Non-document Minutes of proceedings dated June 27, 2018.

Petitioner filed a Notice of Intent to Enter a Plea (ECF No. 221).  Petitioner and Attorney Jack subsequently signed a consent, pursuant to 28 U.S.C. § 636(b)(3) and General Order 99-49, to enter a guilty plea before a magistrate judge.  *See* Consent to Order of Referral to Magistrate Judge for Purposes of Receiving Defendant's Plea of Guilty (ECF No. 263-1); *see also* Transcript of Plea Proceedings (ECF No. 324) at PageID #: 1129-30; *United States v. Cukaj*, 25 Fed.Appx. 290, 291 (6th Cir. 2001) (magistrate judge may accept a guilty plea with the express consent of the defendant and when no objection to the report and recommendation is filed); *Richardson v. United States*, Nos. 5:16CV1723 and 5:13CR0087, slip. op. at 9 (N.D. Ohio Feb. 28, 2019) (Pearson, J.) (citing *Cukaj*, 25 Fed.Appx. at 291).

Petitioner pleaded guilty without an executed written plea agreement before the magistrate judge to conspiracy to possess with intent to distribute and to distribute 500 grams to 2 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 846, distribution of a controlled substance, and use of a communication facility in furtherance of a drug trafficking crime.  *See* Transcripts of Plea Proceedings (ECF Nos. 324 and 366); Minutes of proceedings [non-document], dated December 7, 2018 and January 3, 2019.[3]  Petitioner wished

---

[3]  Petitioner entered a plea of guilty to Count 1 on December 7, 2018.  He

(continued...)

(1:20CV0808)

to plead guilty to the charges presented in the Indictment (ECF No. 1) and intended to plead

without a Plea Agreement:

> THE COURT:   It's been my -- it's my understanding that no Plea
> Agreement has entered into -- been entered into between you and your counsel
> and attorney for -- and the attorney for the government.  Is that correct?
>
> MR. WASHINGTON:  Correct.
>
> THE COURT:  Mr. Jack, have you communicated to Mr. Washington any
> offers of a Plea Agreement that may have been made by the government?
>
> MR. JACK:  I have, Your Honor.  There was a written Plea Agreement
> that we reviewed.  And he's rejected that.
>
> THE COURT:  All right.
> Mr. Washington, has anyone, including either your attorney, the attorney
> for the United States, or the Court, made any promise to you to persuade you to
> plead guilty?
>
> MR. WASHINGTON:  No, ma'am.

ECF No. 324 at PageID #: 1143-44; *see also* ECF No. 366 at Page ID #: 1924.  He also indicated

at the December 2018 change of plea hearing that he was satisfied with the assistance and legal

advice provided by his counsel:

> THE COURT:  Are you completely satisfied with Mr. Jack's
> representation of you and the advice that he has given you?
>
> MR. WASHINGTON:  Oh, yes, ma'am.

ECF No. 324 at PageID #: 1132.  Petitioner reiterated his satisfaction at the continuation of the

change of plea hearing in January 2019.  *See* ECF No. 366 at PageID #: 1919.

---

[3](...continued)
subsequently entered a guilty plea to Counts 29 and 59 on January 3, 2019 during a
continuation of the Guilty Plea Hearing.

(1:20CV0808)

The Court also thoroughly reviewed the elements of conspiracy to possess with intent to

distribute and to distribute controlled substances and ensured that Petitioner understood them

during the plea colloquy in December 2018:

> THE COURT: Okay. I want to go through the elements of that offense, make sure you understand them.
> First of all, do you feel that you understand the charge in Count 1 of the indictment?
>
> MR. WASHINGTON: Yes, ma'am.
>
> THE COURT: Okay. There are two elements to the offense charged in Count 1 of the indictment. The first element is that two or more persons conspired or agreed to violate federal drug laws. The second element is that defendant knowingly and voluntarily joined the conspiracy.
> Do you understand those elements, Mr. Washington?
>
> MR. WASHINGTON: Yes, ma'am.
>
> THE COURT: I'm now going to ask --
> And, Mr. Jack, have you discussed the elements of the offense in Count 1 with your client?
>
> MR. JACK: I have.
>
> THE COURT: And do you believe he understands the elements?
>
> MR. JACK: Yes, Your Honor.

ECF No. 324 at PageID #: 1140-41.

The Government's recitation of the facts that would support a guilty plea to Counts 1 and

29 tracked the above-quoted language from the Indictment (ECF No. 1). *See* ECF No. 324 at

PageID #: 1147-52; ECF No. 366 at PageID #: 1926-27. The Government also stated: "The

parties agreed that the drugs attributable to the defendant is between 500 grams and 2 kilograms

7

(1:20CV0808)

of cocaine in this conspiracy." ECF No. 324 at PageID #: 1150.  Petitioner agreed under oath

with the Government's evidence as to a factual basis for the pleas:

> THE COURT:  All right.
> Mr. Jack, with that addition, do you agree with what Ms. Darden has
> stated as regarding the facts?
>
> MR. JACK:  I do, Your Honor.
>
> THE COURT:  All right.
> Mr. Washington, do you agree with the facts that she has stated?
>
> MR. WASHINGTON:  Yes, ma'am.
>
> THE COURT:  Do you have any changes that you want to make to the
> facts that Ms. Darden stated?
>
> MR. WASHINGTON:  No, ma'am.
>
> THE COURT:  Do you admit that the facts are true?
>
> MR. WASHINGTON:  Yes, ma'am.

ECF No. 324 at PageID #: 1152; *see also* ECF No. 366 at PageID #: 1926-28.  Sworn statements

made "in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63,

74 (1977).

The Court also specifically inquired of Petitioner in the following manner during the plea

colloquy in January 2019 :

> THE COURT:  Do you also understand that if the District Judge enters a
> sentence that is different than what is recommended by either your attorney or the
> attorney for the government, or if you are otherwise unhappy with the sentence,
> that you will have no right to withdraw your guilty plea at that time?

8

(1:20CV0808)

        THE DEFENDANT:  Yes, ma'am.

ECF No. 366 at PageID #: 1925.  Having found that Petitioner's pleas were knowingly,

intelligently, and voluntarily made,[4] the magistrate judge recommended that the Court accept the

pleas.  *See* Report (ECF No. 264) and Supplemental Report (ECF No. 357).

        The matter was set for sentencing before the undersigned on April 9, 2019.  *See* Notice

(ECF No. 375).  On January 23, 2019, the undersigned adopted the magistrate judge's reports

and recommendations without objection and accepted Petitioner's guilty pleas.  *See* Order (ECF

No. 413).

        A final revised Presentence Investigation Report ("PSR") was filed in April 2019.

Petitioner was subject to a minimum term of imprisonment of 10 years on Count 1 with a

maximum term of life imprisonment.  The maximum term of imprisonment on Count 29 was 20

years.  For Count 59, the maximum term of imprisonment was four years.  Counts 1, 29, and 59

were grouped for guideline calculation purposes because the offense level was determined on the

basis of the total quantity of a substance involved.  *See* USSG § 3D1.2(d).  The PSR calculated

Petitioner's total offense level as 34, based on a Chapter Four Enhancement for being a career

offender with at least two prior felony convictions for a controlled substance, and a three-level

reduction for acceptance of responsibility.  With a criminal history category of VI, the PSR

calculated Petitioner's advisory guideline range as 262 to 327 months' imprisonment.  Attorney

Jack zealously argued the Court should vary downward from the guideline range.  *See* Sentencing

---

    [4]  Petitioner admits in the within motion that "his pleas were voluntary."  ECF No.
713-1 at PageID #: 6468; *see also* ECF No. 713-1 at PageID #: 6470 (Petitioner "does not
assert that the pleas were coerced or made in ignorance of the consequences.").

(1:20CV0808)

Memorandum (ECF No. 511); Transcript of Sentencing Proceedings (ECF No. 694) at PageID #:

6286.  Given the record established at sentencing, the Court exercised its discretion and varied

downwards four levels to the advisory guidelines imprisonment range suggested by offense level

30 and its intersection with Category VI, which is 168 to 210 months.  *See* ECF No. 694 at

PageID #: 6297.

On April 9, 2019, the undersigned sentenced Petitioner to a term of 180 months as to

Count 1; a term of 180 months as to Count 29, such term to be served concurrently to the term

imposed for Count 1; and, a term of 48 months as to Count 59, such term to be served

concurrently to the terms imposed for Counts 1 and 29.  Petitioner was also sentenced to three

terms of supervised release, to run concurrently following his term of imprisonment, resulting in

a net eight years of supervised release.  *See* Judgment in a Criminal Case (ECF No. 545); ECF

No. 694 at PageID #: 6298; 6301; Non-document Minutes of proceedings dated April 9, 2019.

Petitioner was advised of his right to appeal:

> THE COURT:  All right.  Mr. Washington, you haven't entered a plea
> agreement.  You haven't waived any of your appellate rights.  I'd like it if you and
> Mr. Jack would have a conversation, talk over what theories you might present to
> an appellate court.  And if you choose to file a notice of appeal, you only have 14
> days after I reduce to writing the sentence that I've just imposed.
>                             \*   \*   \*
> On balance, I'm satisfied, but if for some reason you believe that I've done
> something outside of the law or at any point in this case, you have a right to
> appeal.  Just talk to Mr. Jack about it.  And, Mr. Jack, should Mr. Washington ask
> you to file a notice of appeal, will you do it for him?
>
> MR. JACK:  I will, Your Honor.
>
> THE COURT:  And, Mr. Washington, you shouldn't worry about whether
> or not you can afford counsel, because counsel will be appointed to represent you
> free of charge to you if necessary.

10

(1:20CV0808)

        Do you understand that, sir?

        THE DEFENDANT:  Yes, ma'am.

ECF No. 694 at PageID #: 6308-6309.  Petitioner, however, did not appeal to the United States

Court of Appeals for the Sixth Circuit.[5]

On April 7, 2020,[6] Petitioner timely filed[7] the instant Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence (ECF No. 713).  Petitioner sets forth two grounds in

support of the within motion:

> Ground One:  The record discloses the movant, Leon Lamont Washington, was in
> toto a supplier of cocaine to the drug conspiracy Known to be under the leadership
> of one, Troy Davis, and 23 named members of that conspiracy.  He was never a
> Member directly or Indirectly of this abetment, and has been wrongfully convicted
> and sentenced to Federal detainment.

> Ground Two:  This court constitutionally erred when it appointed attorney
> DAVID C. JACK from the inventory available through the CJA Attorney Panel
> Program to represent the movant.  He was selected on a "rotational basis" in lieu

---

[5] Petitioner is currently serving his prison sentence at FPC Duluth, a minimum
security federal prison camp.  His anticipated release date is April 9, 2030.

[6] Under Sixth Circuit precedent, the petition is deemed filed when handed to
prison authorities for mailing to the federal court.  Cook v. Stegall, 295 F.3d 517, 521 (6th
Cir. 2002).  Petitioner dated his petition on April 7, 2020.  See Brand v. Motley, 526 F.3d
921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed
under Sixth Circuit law to be the date of handing to officials) (citing Goins v. Saunders,
206 Fed.Appx. 497, 498 n. 1 (6th Cir. 2006) (per curiam)).

[7] The "one-year period of limitation" for a defendant to file a § 2255 motion
begins to run from the latest of four triggering events.  28 U.S.C. § 2255(f).  If a
defendant does not file an appeal, his judgment becomes final after his time to file a
notice of appeal expires.  Benitez v. United States, 521 F.3d 625, 629 (6th Cir. 2008);
Sanchez-Castellano v. United States, 358 F.3d 424, 428 (6th Cir. 2004).  ECF No. 545
was entered April 11, 2019, and became final on April 25, 2019, when Petitioner did not
file an appeal.

11

(1:20CV0808)

of being culled by experience.  Mr. Jack's ineffectiveness is directly attributed to his unqualified background and legal experience.

ECF No. 713 at PageID #: 6447, 6448.

### III.  Discussion

**A.**     **Section 2255 Legal Standards**

As stated by the United States Court of Appeals for the Sixth Circuit:

. . .To obtain relief under § 2255, the movant "must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.' " *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). An evidentiary hearing "is required unless the record conclusively shows that the petitioner is entitled to no relief." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *see* 28 U.S.C. § 2255(b).

*Nix v. United States*, No. 20-6218, 2022 WL 815539, at *1 (6th Cir. March 15, 2022).

As stated in *Watkins v. United States*:

It is well settled that a proper § 2255 motion does not reach alleged errors that are not of a constitutional or jurisdictional magnitude and that could have been reached by a direct appeal.  *Stone v. Powell*[,] 428 U.S. 465, 477 (1976).  To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted." *Id.* at 164.

Nos. 5:11CR0536, 5:19CV2427, 2019 WL 6170832, at *2 (N.D. Ohio Nov. 20, 2019).

**B.**     **Evidentiary Hearing**

In *Amr v. United States*, 280 Fed.Appx. 480 (6th Cir. 2008), the Court of Appeals for the

Sixth Circuit held that a prisoner was not entitled to a hearing on an ineffective assistance of

counsel claim when the claim was conclusively refuted by the record.  *Id.* at 485-86.  "[A]

12

(1:20CV0808)

motion under § 2255 is ordinarily presented to the judge who presided at the original conviction

and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may

enable [her] summarily to dismiss a § 2255 motion. . . ."  *Blackledge v. Allison*, 431 U.S. 63, 74

n. 4 (1977).  The Court finds that the within motion may be resolved without an evidentiary

hearing because the undersigned's recollection, as well as the files and records in this case,

conclusively show that Petitioner is not entitled to relief under § 2255.  *Ross v. United States*,

*339 F.3d 483, 490 (6th Cir. 2003).*

###### C.    Grounds Asserted in the **§ 2255** Motion

####### 1.    Ground One

Petitioner argues that because he was not a member of this 25-person drug conspiracy

under the leadership of co-defendant Troy Davis, severance was mandatory under Fed. R. Crim

R. P. 14,[8] which grants the district courts discretion to order separate trials of counts or separate

trials against different defendants, if joinder "appears to prejudice a defendant or the

government."  Rule 14(a); *see also Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("[W]hen

defendants properly have been joined under Rule 8(b), a district court should grant a severance

under Rule 14 . . . if there is a serious risk that a joint trial would . . . prevent the jury from

making a reliable judgment about guilt or innocence.").  Petitioner declares that he "was the

primary source of supply for this conspiracy with the illegal substance, cocaine.  He had no direct

---

[8] Petitioner quotes a portion of the prior version of Rule 14.  *See* ECF No. 713-1 at PageID #: 6468.  In 2002, Rule 14 was amended "as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules."  These changes were "intended to be stylistic only." Fed. R. Crim. P. 14 advisory committee's note.

(1:20CV0808)

involvement in the direct objective or profit of the conspiracy." ECF No. 713-1 at PageID #:

6467.  He contends "there is not one spec of evidence to attach Washington to this conspiracy,

other than he supplied its members with the illegal substance, cocaine, for a profit.  Yes, a crime

he did commit but that was solely as a supplier to the conspiracy, having no personal agreement

or active role other than that in it." ECF No. 713-1 at PageID #: 6476.  Finally, Petitioner opines,

"[y]ou can't be a supplier and a member of a conspiracy simultaneously, it's just not good

business." ECF No. 713-1 at PageID #: 6478.  According to Petitioner, Attorney Jack was

ineffective because he did not file a pretrial motion to sever Counts 1 and 29 and argue that not

only was Petitioner not a member of the conspiracy, but he was a "supplier" in the business of

"drug trafficking," not "drug distribution," and those counts should have been severed from the

case.

     It is well-settled that a "buyer-seller relationship alone is insufficient to tie [a defendant]

to a conspiracy." *United States v. Hamm*, 952 F.3d 728, 736 (6th Cir. 2020) (quoting *United

States v. Deitz*, 577 F.3d 672, 680 (6th Cir. 2009)).  The United States Court of Appeals for the

Sixth Circuit recently stated:

> Our court has long interpreted the drug-conspiracy statute, 21 U.S.C. § 846, to
> prohibit two individuals from knowingly reaching an agreement to distribute
> drugs.  *See, e.g.*, *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019).  This
> conspiracy test could be read to cover every drug transaction between a willing
> seller and a willing buyer, even those for the buyer's personal use.  After all, the
> seller has agreed with the buyer to "distribute" drugs between them.  Yet we have
> also long held that a buyer-seller agreement alone does not establish a
> "conspiracy" under § 846.  *See, e.g.*, *United States v. Grunsfeld*, 558 F.2d 1231,
> 1235 (6th Cir. 1977).  This case requires us to consider the justification for and
> scope of this "buyer-seller" exception to our otherwise broad reading of the

14

(1:20CV0808)

drug-conspiracy statute.

*United States v. Wheat*, 988 F.3d 299, 304 (6th Cir. 2021) (holding that a single instance of distribution of a 0.3-gram free sample of heroin was insufficient to sustain a conspiracy conviction under the "narrow" buyer-seller exception, and noting that repeated purchases of large quantities of drugs and a pattern of activity over time tend to prove conspiracy).

It was part of the conspiracy that Petitioner supplied co-defendants Troy Davis, Elonzo Davis, and others with cocaine, some of which was "cooked," or manufactured into cocaine base (crack). In addition, it was part of the conspiracy that Petitioner, on several occasions, discussed being surveillance-conscious, and minimized drug talk over the phone, frequently switched phones, and actively looked for police presence around him. Many of the defendants who were involved in the conspiracy were also related. Troy Davis and Elonzo Davis are uncle and nephew. Petitioner is a cousin to the Davis family. The Government's recitation of the facts that would support a guilty plea to Counts 1 and 29, *see* ECF No. 324 at PageID #: 1147-52, presented enough additional evidence of a broader agreement between Petitioner and co-defendants Troy Davis, Elonzo Davis, and others to distribute cocaine to third parties to overcome the buyer-seller exception to the otherwise broad reading of the drug-conspiracy statute, 21 U.S.C. § 846. *See United States v. Colbert*, No. 21-2772, 2022 WL 17958796, at *4 (6th Cir. Dec. 27, 2022) (disagreeing with defendant-supplier's contention that no rational jury could have found that he joined a drug conspiracy beyond his mere buyer-seller transactions with operator of drug-distribution scheme). Petitioner also agreed under oath with the evidence as to a factual basis for the pleas. *See* ECF No. 324 at PageID #: 1152; ECF No. 366 at PageID #: 1926-

15

(1:20CV0808)

27.  Moreover, " 'even an occasional supplier . . . can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation.' " *United States v. Gibbs*, 190 F.3d 188, 198 (3d Cir. 1999) (quoting *United States v. Price*, 13 F.3d 711, 728 (3d Cir. 1994)).  This is true even if the supplier "had been only an occasional supplier, and did not himself know all the details, goals, or other participants of the broader conspiracy." *United States v. Theodoropoulos*, 866 F.2d 587, 594 (3d Cir. 1989), *overruled on other grounds by United States v. Price*, 76 F.3d 526, 528 (3d Cir. 1996).

"Risk of simple prejudice is insufficient to sever the trials of co-defendants; the prejudice must be compelling, specific, and actual, or substantial or undue." *United States v. Martinez*, 432 Fed.Appx. 526, 529 (6th Cir. 2011) (internal quotation marks and citations omitted). Petitioner has identified no potential prejudice rising to the level requiring severance under Sixth Circuit precedent.  Thus, Attorney Jack was not ineffective for failing to file a meritless motion for severance.  *See Patel v. United States*, Civil No. 15-13230 and Cr. No. 11-20468, 2017 WL 2903376, at *5 (E.D. Mich. July 7, 2017) (denying § 2255 motion to vacate sentence that argued *inter alia* that trial counsel was ineffective for failing to file a pretrial motion to sever).

### 2.  Ground Two

#### a.

In *United States v. Vandewege*, 433 Fed.Appx. 388 (6th Cir. 2011), an appeal waiver in the plea agreement prevented an appeal of the district court's denial of the defendant's motion for downward variance from the guidelines range.  *Id.* at 390; *see also United States v. Moon*, 808 F.3d 1085, 1089-90 (6th Cir. 2015) (holding defendant, whom requested a downward variance,

16

(1:20CV0808)

waived right to appeal substantive reasonableness of sentence because, as part of plea agreement,

he reserved limited right to appeal "adverse rulings on any preserved objection asserting that the

[district court] incorrectly determined the final Guideline range"); *United States v. Jones*, 620

Fed.Appx. 434, 441-42 (6th Cir. Aug. 12, 2015) ("But neither of these exceptions [in the

appellate waiver] apply to Jones's argument that the district court erred in its treatment of Jones's

motion for a downward variance.").

Attorney Jack stated the following at the sentencing hearing during his argument for a

sentencing outcome:

> As far as procedurally, why we're here without a plea agreement, it is really rare, I can't remember a time, where I have a client charged in a big drug conspiracy that I plead him to the indictment.  I almost always have some agreement regarding that.
>
> \*   \*   \*
>
> . . . it appeared to me that what was best for my client was to leave the decision wholly up to the judge and be able to argue for a variance down, downward.
> And so that's why he pled guilty to the indictment and there's no plea agreement.  It wasn't because [the Government] was being unreasonable at all. She was not.  She was being very reasonable.  It's just that I wanted to be able to at least argue for a variance downward for my client, Judge, and with a plea agreement, I would not have been permitted to do that.

ECF No. 694 at PageID #: 6285-86; *see also* Sentencing Memorandum (ECF No. 511).

Petitioner argues "[n]othing could be more nonsensical, and clearly this utterance comes from an

unqualified, ineffective attorney."  ECF No. 713-1 at PageID #: 6466.

The Court disagrees.  Attorney Jack successfully argued for the Court to vary downwards

from the guideline range of 262 to 327 months' imprisonment.  Given the record established at

sentencing, the Court exercised its discretion and varied downwards.  Thus, Petitioner received a

lower sentence of 180 months.  *See* ECF No. 694 at PageID #: 6297.  Even had the Court *not*

17

(1:20CV0808)

varied downwards, Petitioner would have maintained his right to file a sentencing appeal.  In

other words, Petitioner would not have been precluded by an appellate waiver in a written plea

agreement because he pleaded straight up to the Indictment (ECF No. 1).  *See* Mona Lynch,

*Booker Circumvention? Adjudication Strategies in the Advisory Sentencing Guidelines Era*, 43

N.Y.U. Rev. L. & Soc. Change 59, 91, n.120 (2019) (By [p]leading 'straight up[,]' . . . the

defendant does not get any advantages of negotiated terms as to elements controlled by the

prosecutor, such as a say in the final charges of conviction, [but,] she typically retains more rights

to challenge the guidelines, argue for sentencing outcomes, and appeal the sentence.").

**b.**

Petitioner asserts that "should he not be favored with relief from the two Grounds in

presentment herewith, he insists his pleas of guilt to Counts 1 and 29 be invalidated, and his case

be remanded for repleading in isolation to Count 59, which properly states his breach of law in

the case at bar.  It persists as the only indictment as written applies to him."  ECF No. 713-1 at

PageID #: 6468.  In other words, Petitioner requests that his guilty pleas to Counts 1 and 29 be

set aside because he pleaded guilty to those counts only at the instigation of his allegedly

unqualified, inadequate or inexperienced counsel.  *See* Fed. R. Crim R. P. 11(e) (after the court

imposes its sentence, a plea can be set aside only on direct appeal or collateral attack).

The CJA Plan for the Northern District of Ohio requires that CJA appointed counsel

provide high quality representation consistent with the best practices of the legal profession to all

CJA clients.  *See Polk County v. Dodson*, 454 U.S. 312, 318 (1981) (" 'Once a lawyer has

undertaken the representation of an accused, the duties and obligations are the same whether the

18

(1:20CV0808)

lawyer is privately retained, appointed, or serving in a legal aid or defender program.' " (quoting ABA Standards for Criminal Justice section 4–3.9 (2d ed. 1980))).

Attorney Jack is an experienced CJA counsel. From April 30, 1996 to June 27, 2018 (when Attorney Jack was appointed to represent Petitioner at his arraignment), Attorney Jack had been appointed CJA counsel by Judicial Officers of the Northern District of Ohio for 162 persons, like Petitioner, whom were financially unable to obtain adequate representation in accordance with the CJA. And Attorney Jack remains a member of the CJA Panel for Akron/Youngstown, having been appointed as counsel in 228 cases as of December 21, 2022.

The Supreme Court has established a two-part test for determining whether an attorney rendered ineffective assistance. *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In attempting to establish that an attorney's performance was deficient, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* "To establish prejudice, Petitioner must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result." *Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003). "When applying *Strickland*, if we can more

(1:20CV0808)

easily dispose of an ineffective assistance claim based on lack of prejudice, we should follow that

route." *Id*.

 "Petitioners claiming ineffective assistance of counsel under *Strickland* have a heavy

burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).  "Proving prejudice is not

easy" because the petitioner is confronted with the "high burden" of demonstrating "that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019) (citing

*Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)).  The petitioner must demonstrate the

constitutional violation because it is "presumed that the lawyer is competent." *United States v.

Cronic*, 466 U.S. 648 (1984).  A claim alleging ineffective assistance of counsel that challenges

the validity of the plea must demonstrate a reasonable probability that, but for the error

committed by counsel, the defendant would not have pleaded guilty and would have insisted on

going to trial.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  For the reasons set forth herein,

there was no deficient performance by Attorney Jack and no prejudice to Petitioner.

**c.**

 Finally, Petitioner declares:

> Following sentencing, Judge Pearson, rightfully informed Mr. Washington that he
> could appeal, if dissatisfied with the result.  When the movant confronted Mr.
> Jack to do so, excuses followed to diffuse his request.  It is obvious by content
> herein, a Direct Appeal was critical based on subject matter in presentment
> herewith.  Refusing to file for Direct Appeal, constitutes an immediate evidentiary
> hearing.

ECF No. 713-1 at PageID #: 6489; *see also* ECF No. 928-1 at PageID #: 7686; 7689-90.  Courts

apply the three-part sequential test expressed in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), "[t]o

20

(1:20CV0808)

determine whether counsel's failure to file a notice of appeal was objectively unreasonable."

*Short v. United States*, 786 F. Supp.2d 1348, 1350 (W.D. Mich. 2011).  First, the court must

determine whether the defendant gave counsel express instructions regarding an appeal.

*Flores-Ortega*, 528 U.S. at 477.  "[T]he failure to perfect a direct appeal, in derogation of a

defendant's actual request, is a *per se* violation of the Sixth Amendment."  *Campbell*, 686 F.3d at

358 (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)).  A "[m]ovant must

show by a preponderance of the evidence that he expressly requested that Counsel file a notice of

appeal, and Counsel failed to do so."  *Short*, 786 F. Supp.2d at 1351 (citing *Pough v. United

States*, 442 F.3d 959, 964 (6th Cir. 2006)).  On the other hand, "a defendant who explicitly tells

his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions,

his counsel performed deficiently."  *Flores-Ortega*, 528 U.S. at 477 (emphasis in original).

Second, if there is no express instruction to file a notice of appeal, a court must ask

"whether counsel consulted with the defendant about an appeal."  *Id.* (quoting *Johnson v. United

States*, 364 Fed.Appx. 972, 976 (6th Cir. 2010)).  Consultation means "advising the defendant

about the advantages and disadvantages of taking an appeal, and making a reasonable effort to

discover the defendant's wishes."  *Id.* (quoting *Flores-Ortega*, 528 U.S. at 478).  In response to

the Court's direct question on this point, during the sentencing hearing, Attorney Jack responded

affirmatively that should Petitioner ask him to file a notice of appeal, he would file it for him.

*See* ECF No. 694 at PageID #: 6309.

Third, if counsel fails to consult with the movant, a court must ask "whether the failure to

consult was objectively unreasonable."  *Id.* (quoting *Johnson*, 364 Fed.Appx. at 976).  A court

21

(1:20CV0808)

may find objective unreasonableness if either (1) "a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal)," or (2) "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

"[W]hen a defendant presents an affidavit containing 'a factual narrative of the events that is neither contradicted by the record nor inherently incredible' and the government offers nothing more than 'contrary representations' to contradict it, the defendant is entitled to an evidentiary hearing." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007)). Petitioner, however, has not filed either a declaration or affidavit in support of his claim that he requested that Attorney Jack file a notice of appeal for him. *See* Declaration of Leon L. Washington (ECF No. 928-2 at PageID #: 7702-7704).

The Court finds that Petitioner has not established by a preponderance of the evidence that he expressly requested Attorney Jack to file a notice of appeal following the sentencing hearing. Therefore, an evidentiary hearing is not warranted in the present case. Although Petitioner summarily states that he instructed Attorney Jack to file an appeal, several factors weigh against the veracity of Petitioner's statement. Prior to filing the within § 2255 motion, Petitioner did not timely contact the Court regarding an appeal. Moreover, he has not provided any evidence that he ever contacted Attorney Jack regarding an appeal or why counsel had not filed an appeal, had Petitioner in fact requested one. The facts in the record demonstrate that Petitioner's claim that he requested that Attorney Jack file a notice of appeal is both contradicted

22

(1:20CV0808)

by the record and inherently incredible. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (when a petitioner presents a factual account of events that is contradicted by the record or inherently incredible, he is not entitled to an evidentiary hearing).

### IV. ECF Nos. 928 and 928-1

For good cause shown, the Court grants Petitioner's Motion to Grant Page Enlargement as to Attached Motion in Relation to Original 2255 Petition (ECF No. 928).

In ECF No. 928-1, filed on May 18, 2023, Petitioner seeks to supplement the two grounds in his § 2255 motion (ECF No. 713) and "add[ ] into the record an additional 'actual-innocence' claim of Chapter Four Career Designation and statutory enhancement." ECF No. 928-1 at PageID #: 7680-81; *see also* ECF No. 928-1 at PageID #: 7690-98. The mandate of Fed. R. Civ. P. 15, that a court freely grant leave to amend when justice so requires, has been interpreted to allow supplementation and clarification of claims initially raised in a timely § 2255 motion. *See* 28 U.S.C. § 2242 (explaining that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); *Anderson v. United States*, 39 Fed.Appx. 132, 136 (6th Cir. 2002).

As stated above, a § 2255 motion is subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). Once the one-year statute of limitations has expired, however, allowing amendment or supplementation of a § 2255 motion with additional grounds for relief would defeat the purpose of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *Oleson v. United States*, 27 Fed.Appx. 566, 570-71 (6th Cir. 2001). "[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of

23

(1:20CV0808)

limitations has expired." *United States v. Clark*, 637 Fed.Appx. 206, 209 (6th Cir. 2016) (alterations in original) (quoting *United States v. Thomas*, 221 F.3d 430, 436 (3rd Cir. 2000).

Petitioner's judgment became final on April 25, 2019 – after his time to file a notice of appeal expired.  *Benitez*, 521 F.3d at 629; *Sanchez-Castellano*, 358 F.3d at 428.  Thus, Petitioner had one year – until April 27, 2020 – to file a motion under § 2255, or to amend it freely.  To the extent Petitioner seeks to supplement claims that he already raised in his § 2255 motion (ECF No. 713), the Court has discretion to permit him to do so.  New claims, such as Petitioner's "actual-innocence" claim in the present case, are barred by AEDPA's one-year limitations provision.

### V.  Conclusion

Accordingly, the Court finds that Petitioner fails to demonstrate any ground on which he is entitled to relief under § 2255.  Petitioner Leon Lamont Washington's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 713) is denied.

Petitioner's Motion to Exceed Page Limits (ECF No. 737) is granted without opposition. Respondent's Motion to Strike (ECF No. 727) is denied as moot.  Petitioner's Motion to Grant Page Enlargement as to Attached Motion in Relation to Original 2255 Petition (ECF No. 928) is granted as to pagination but denied as to the request to add an additional claim.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of

24

(1:20CV0808)

appealability.  28 U.S.C. §2253(c); Fed. R. App. P. 22(b).


       IT IS SO ORDERED.


   May 31, 2023                              */s/ Benita Y. Pearson*
Date                                        Benita Y. Pearson
                                             United States District Judge